IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 06-cv-01421-RPM

LAURA MEDINA,

          Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

          Defendant.
_____

ORDER OF REVERSAL AND FOR REMAND
_____

      Laura Medina's application for Disability Insurance Benefits under the Social Security Act was denied by the decision of an Administrative Law Judge ("ALJ"), dated March 16, 2005, affirmed by the Appeals Council on May 24, 2006. The claim is here for judicial review under 42 U.S.C. § 405(g). The ALJ found that Ms. Medina, age 52 at the date of the hearing, had not engaged in any substantial gainful activity since July 9, 2003. The ALJ found that the claimant had the severe impairment of fibromyalgia but had the residual functional capacity to perform her past relevant work as a health care provider and unit clerk. Accordingly, he denied the claim at Step 4 of the sequential evaluation process.

      Ms. Medina was certified as a nurse assistant ("CNA") after training at Pueblo Community College, but testified that she was not currently certified at the time of her hearing. Her health care work had been providing home care for elderly persons. Her last employment was working for an elderly woman in her home beginning in 1999 and ending July, 2003. The record of earnings shows that the claimant received $10,200 in

1999, $9,948 in 2000, $6,606 in 2001 and $5,784 in 2002. R. 43. Ms. Medina testified that in the beginning she worked 30 hours a week, caring for her patient by getting her out of bed, caring for her personal needs, making meals and cleaning the living quarters. The claimant worked only one and a half to two hours a day by July, 2003, because she could no longer lift the patient and the patient's daughter was taking care of her mother doing most of the work that Ms. Medina had done. The job ended when the patient died.

The ALJ wrote that he gave great weight to a letter from Dr. David Levine, M. D., dated June 30, 2003. Dr. Levine's letter included the following conditions he had diagnosed in Ms. Medina for whom he had provided care since 1975.

1. Fibromyalgia
2. Type II diabetes
3. Essential hypertension
4. Von Willebrand's disease
5. GERD
6. Migraine headaches
7. Atrial septal defect, congenital, which has been treated with an Amplatzer device
8. Bilateral carpal tunnel syndrome, status post surgery

In his letter Dr. Levine reviewed all of the medications that had been prescribed for Ms. Medina, which had controlled many of her medical conditions. The doctor expressed his belief that the fibromyalgia syndrome is the most limiting of the patient's problems and that over the last few years the symptoms made her feel subjectively that she could only engage in more and more limited work, both in terms of duration of activity as well as intensity of activity. R. 103. He recommended that she be given a functional capacity evaluation by a physical therapist.

That was done by John M. McAward, PT, MTC in Durango, Colorado. The report

2

of that evaluation is at R.143-150. The report details the objective testing that was done together with the patient's expressions of pain during testing procedures. The PT tested for symptom magnification and concluded that she showed no signs of it. The PT concluded with this assessment:

> Laura's work level is classified as sedentary which allows occasional lifts of 15 lbs. and frequent and constant lifts of 0 lbs. These values are from floor to knuckle height. As for lifting knuckle to shoulder she can occasionally lift 12 lbs. and occasionally lift 10 lbs. overhead. She can occasionally carry 17 lbs. She can occasionally push and pull 28 lbs, frequently 10 lbs. and constantly 0 lbs. of force respectively. As for her non material handling activities, she can occasionally sit for 15 min., stand for 20 min., bend or stoop forward, reach forward and overhead with her bilateral upper extremities, climb stairs, walk and perform repetitive leg and arm movements. She should never climb ladders, squat, kneel, crawl or balance. As for her hand function, she can perform low speed assembly only. She has trouble with fine control secondary to periods of locking up into her fingers from carpal tunnel symptoms. She will have trouble with high speed assembly and heavy grasp activities as shown in the results of her hand grip testing and LLUMC Activity Sort testing.
>
> Laura is able to continue working in the part time status of 2 to 4 hours per day as a home healthcare provider as she has in the past. This should be in the sedentary demand classification with lifting restrictions as listed above. It is highly unlikely that patient will increase her lifting and work tolerance in the future as she suffers from a long standing problem over a many year duration.
>
> R.149.

The ALJ wrote of this report as follows:

> The undersigned gives this assessment no weight, as it is not supported by the medical evidence of record. Further, it appears to be based on the claimant's subjective complaints and reports of abilities. For example, the claimant complained of her hands locking up in the past due to carpel tunnel. There was no indication that during this test the claimant's hands lock up. However, the examiner noted that the claimant had "trouble with fine control secondary to periods of locking up into her fingers from carpal tunnel symptoms." Also, the claimant reported that she had increased lower extremity swelling in the afternoon, and the examiner indicated that, as a result she had decreased work tolerance. There are no medical

3

records that indicate that the claimant had problems with her carpel tunnel during the period in question. Also, there is no indication that the claimant had a severe problem with swelling daily in her extremities.

R. 20.

Ms. Medina testified at the hearing as to the limiting effects of pain with varying severity with increased frequency since 2002. She testified that she needs to lie down for rest daily and has difficulty sleeping at night.

The ALJ found that the claimant "was not a persuasive witness." He found that her testimony that she could walk four miles or more a day in July, 2003, but by August, 2004, she had reported walking about three hours a day as an inconsistency which impacted negatively on her credibility. He also found the complaint of numbness in her hands was not credible because she had not been treated for carpal tunnel syndrome since her alleged disability onset day of July 9, 2003. The medical records show that Ms. Medina had bilateral carpal tunnel release surgery on September 26, 1989, with a follow-up evaluation in February, 1992, because of complaints about residual symptoms. R. 376-377.

Dr. Levine saw Ms. Medina on July 7, 2003, for an evaluation of her severe fibromyalgia syndrome. She reported difficulty sleeping and Dr. Levine completed a Work Capacity Evaluation (Mental) form, expressing a moderate limitation on understanding and memory and a marked limitation on the ability to sustain an ordinary routine without special supervision as well as moderate limitations on the ability to work with or in proximity to others without distraction. The ALJ gave no weight to that report from Dr. Levine, finding the opinion not credible because not supported by medical records or medical evidence. The ALJ recognized that Dr. Levine had treated this patient for years for fibromyalgia.

The ALJ supported his finding of residual functional capacity by reference to the findings of a State Agency Physician, referring to Exhibit No. 5F which appears at R. 195-202.  That clearly was done by a reviewer of the medical records who was not a physician, as conceded by the defendant in his brief.  The defendant excuses this as harmless error and a mere deficiency in report writing.  The Court cannot accept that explanation.  The ALJ apparently gave this report more weight because he considered it to be from a physician and was using it to contradict the claimant's testimony and her treating physician's reports.

The ALJ relied on the testimony of a Vocational Expert ("VE") at the hearing.  The VE, in response to the ALJ's hypothetical question, testified that the "unit clerk work" would be the only past work that the claimant could perform.  That position as described in the Dictionary of Occupational Titles requires the ability to record critical information concerning patients in a hospital or medical facility.  DOT Code 245.362-014 and the work history report shows only that Ms. Medina had some such employment in 1994.  She was not asked to provide further information about that prior employment at her hearing in 2004.  The ALJ did refer to unit clerk as well as healthcare provider in his finding of the claimant's ability to do past work.  The defendant in a footnote to his brief says that the ALJ's finding that the plaintiff could perform her past relevant work as a healthcare provider "was an obvious typographical error which was, at most, harmless." Defendant's brief, page 16.

This Court cannot give this apparent error the benign explanation that it was typographical.  The ALJ specifically wrote that in addition to the VE's opinion that the claimant could work as a unit clerk, she could perform her past relevant work as a healthcare provider, as described in her work history report.  R. 21.  He did not show

any recognition of the fact that she could not do that job except on a limited part time basis, as confirmed by her earnings record. Moreover, the ALJ did not give full recognition to the VE's testimony on examination by the claimant's attorney that the unit clerk job could not be performed if special supervision was required.

In sum, the ALJ's opinion is not supported by substantial evidence in the record and it is therefore

ORDERED that the denial decision is reversed and it is

FURTHER ORDERED that this claim is remanded to the Commissioner for further evaluation in appropriate proceedings which may require additional medical evaluation by a competent physician specializing in pain control.

DATED: April 28th, 2008

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge